IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOMINICK'S FINER FOODS, LLC,

Plaintiff,

v.

UFCW UNIONS & EMPLOYERS MIDWEST PENSION FUND,

Defendant.

No. 18 C 6879

MEMORANDUM OPINION AND ORDER

Dominick's Finer Foods, LLC, ("Dominick's") sues UFCW Unions and Employers Midwest Pension Fund (the "Fund") for allegedly failing to comply with the terms of a rehabilitation plan pursuant to Section 502(a)(10) of ERISA, 29 U.S.C. § 1132(a)(10), (Count I) and for breach of contract (Count II). Dominick's also alleges a claim of unjust enrichment in the alternative (Count III). The Fund moves to dismiss the complaint under Rule 12(b)(6). For the reasons that follow, I grant the motion.

I.

For purposes of the Fund's motion, I accept all factual allegations in the complaint as true and draw all reasonable inferences in Dominick's favor. *See Geinosky v. City of*

*Chicago*, 675 F.3d 743, 746 (7th Cir. 2012). I may consider, in addition to Dominick's allegations, documents that are attached to the complaint and central to its claims. *Id.* at 745 n.1.

Dominick's is a Delaware Limited Liability Company. Cmplt. ¶ 1. Dominick's sole member is Dominick's Supermarkets, LLC, another Delaware Limited Liability Company, which has a sole member, Safeway, Inc., a Delaware corporation with its principal place of business in Boise, Idaho. *Id*. The Fund "is a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and is administered in Rosemont, Illinois." *Id*. ¶ 2.

Until 2014, Dominick's made contributions to the Fund pursuant to two collective bargaining agreements in effect from October of 2008 to October of 2012 (the "CBAs"). *Id*. ¶¶ 5, 17. Section 22.4 of each CBA provides that in addition to its normal hourly contributions to the Fund, Dominick's "has voluntarily agreed," subject to certain conditions, "to make an additional single sum payment (the 'Voluntary Payment') to the fund on December 1, 2011." Dkt. 1-1, 1-2 at ¶ 22.4. The conditions set forth in the CBAs include that the Voluntary Payments "shall be used and applied solely for the purpose of improving the funded status of the Fund," and that the Voluntary Payments "shall not be counted...(b) as an hourly or other contribution used in any way to determine the withdrawal liability payment schedule under

ERISA Section 4219, or Article XVI of the Pension Plan documents; or (c) otherwise to increase the Employer's share of withdrawal liability or withdrawal liability payments to the Pension Plan in any way." *Id.*[1]

In September of 2010, the Fund's Board of Trustees passed two resolutions accepting and acknowledging the Voluntary Payments memorialized in the CBAs. Cmplt. at ¶ 9. By that point, the Fund had been certified by an actuary "to be in critical status under ERISA Section 305, 29 U.S.C. § 1085." *Id.* at ¶ 12; *see* Dkt 1-5 at 1. On October 22, 2010, the Fund adopted a written rehabilitation plan (the "Rehabilitation Plan"), which provided, "[i]f an employer chooses, [it] can pay a reduced Supplemental Contribution Rate increase over a collective bargaining period" if it makes a Voluntary Payment. Cmplt. ¶ 13. On November 9, 2010, the Fund passed a consent resolution, stating, *inter alia*, that if Dominick's Voluntary Payments "exceed the amount Dominick's would have paid pursuant to the [Rehabilitation] Plan's rehabilitation schedules, the [Fund's] Trustees shall provide an equitable credit to Dominick's" in the form of a reduced rate for its contribution payments. *Id.*

---

[1] Dominick's states in its opposition that the CBAs' provisions relating to the Voluntary Payments "are superfluous and put the parties in no different position than they would be in if the CBAs contained no such references." Dkt. 24 at 12, n. 12. I address this perplexing position in conjunction with my discussion of its state law claims.

On December 1, 2011, Dominick's made the two Voluntary Payments provided in Section 22.4 of the CBAs, "[b]ased on the Fund's agreement to accept Voluntary Payments that would later offset payments Dominick's was required to make to the Fund." *Id.* ¶ 14. The Fund accepted these two Voluntary Payments, which totaled roughly $12 million dollars, "pursuant to the terms, conditions and agreements contained in the [CBAs], the Resolutions and the Rehabilitation Plan." *Id.* ¶ 15. Dominick's subsequently received some $3 million in offsets to its contributions to the Fund. *Id.* ¶ 17.

In 2014, Dominick's withdrew from the Fund, was assessed withdrawal liability, and stopped being a contributing employer to the Fund. *Id.* ¶¶ 5, 16, 18. Dominick's then asked the Fund to offset its withdrawal liability by the approximately $9 million of the Voluntary Payments that had not been offset against Dominick's contributions to the Fund, since the Voluntary Payments could no longer be applied as offsets to contributions. *Id.* ¶ 18. On June 4, 2014, the Fund rejected this request. *Id.* ¶ 19. Nearly four years later, Dominick's filed this lawsuit to compel the Fund to credit or refund its excess payments.

II.

To survive the Fund's motion to dismiss, the complaint must state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007). The Fund argues that Dominick's fails to state a claim under Section 502(a)(10) of ERISA for two reasons: First, Dominick's is not within the scope of "persons empowered to bring a civil action" under Section 502(a)(10); and second, even if Dominick's were empowered to bring such an action, its factual allegations are insufficient to support a claim under that section.

Section 502(a)(10) of ERISA provides:

> (a) PERSONS EMPOWERED TO BRING A CIVIL ACTION: A civil action may be brought—
>
> . . .
>
> (10) in the case of a multiemployer plan that has been certified by the actuary to be in endangered or critical status under section 1085 of this title, if the plan sponsor—
>
> . . .
>
> (B) fails to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section,
>
> *by an employer that has an obligation to contribute with respect to the multiemployer plan* or an employee organization that represents active participants in the multiemployer plan, for an order compelling the plan sponsor to adopt a funding improvement or rehabilitation plan or to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section and the funding improvement or rehabilitation plan . . .

29 U.S.C. § 1132(a)(10)(emphasis added).[2] The Fund argues that because Dominick's has withdrawn from the Fund and no longer "has an obligation to contribute" to the plan, it does not satisfy the statute's plainly stated definition of "persons empowered" to bring a civil action.

Dominick's acknowledges that it has no current obligation to contribute to the Fund, but it argues that "standing" under Section 502(a)(10) of ERISA is not limited to employers with continuing contribution obligations. In Dominick's view, Section 502(a)(10) should not be construed as empowering only employers with ongoing contribution obligations to file suit to compel compliance with a rehabilitation plan. Such a narrow construction, Dominick's submits, would "produce nonsensical results" at odds with other aspects of ERISA's statutory scheme. Dkt. 24 at 4. I disagree.

The Seventh Circuit has held that "courts should take care to interpret ERISA strictly according to its plain language." *Silvernail v. Ameritech Pension Plan*, 439 F.3d 355, 358 (7th Cir. 2006) (quoting *Nestle Holdings, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 342 F.3d 801, 805 (7th Cir. 2003)). Historically, Section 502 of ERISA did not provide a civil cause

[2] Dominick's has no cause of action under Subsection A of Section 502(a)(10), which is relevant only when the plan sponsor has not adopted a rehabilitation plan.

of action to contributing employers. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case."). That changed when Congress passed the Pension Protection Act of 2006, which authorized contributing employers to compel the adoption or implementation of a rehabilitation plan as set forth in Section 502(a)(10). Pub. L. No. 109-280, 120 Stat. 780 (2006). It appears that no court has yet considered whether a withdrawn employer with no ongoing contribution obligations meets the statutory definition of "an employer that *has* an obligation to contribute" in Section 502(a)(10) (emphasis added).[3] But courts in this district have held that a *former* fiduciary does not meet the statutory definition of "a fiduciary" empowered to bring

[3] The few cases that interpret Section 502(a)(10) do not address the issue here. *See WestRock RKT Co. v. Pace Indus. Union-Mgmt. Pension Fund*, 856 F.3d 1320, 1324 (11th Cir. 2017) (affirming dismissal of employer's Section 502(a)(10) claim because employer failed to allege that plan administrator's amendment to rehabilitation plan violated the requirements of Section 1085); *Callaway Golf Co. v. Screen Actors Guild, Inc.*, No. 07CV0373-LAB (WMC), 2009 WL 10672729, at *3 (S.D. Cal. Mar. 30, 2009) (reading 29 U.S.C. §§ 1132(e) and 1132(a)(10) together to find ERISA does not provide employers with a cause of action for declaratory relief).

suit under Section 502(a)(3). *See Ossey v. Mardola*, No. 96 C 296, 1997 WL 223070, at *2 (N.D. Ill. Apr. 28, 1997) (former fiduciary could not sue under ERISA because he no longer satisfied statutory definition of "fiduciary"); *Roncone v. Ligurotis*, No. 92 C 4054, 1993 WL 321737, at *2 (N.D. Ill. Aug. 20, 1993) (former fiduciary lacked statutory standing to challenge actions of fund fiduciaries); *see also Trujillo v. Am. Bar Ass'n*, 706 F. App'x 868, 870 (7th Cir. 2017) (noting circuit split on whether Section 502(a)(3) authorizes suits by *former* fiduciaries and declining to decide the question). Collectively, these authorities militate in favor of strict adherence to the plain language of Section 502(a)(10), which on its face authorizes suits only by an employer that *has* contribution obligations.

Dominick's urges against reading too much into Section 502(a)(10)'s present-tense formulation, noting that Section 515 likewise uses the present tense to describe an employer's contribution obligations, even though all agree that a plan fiduciary may sue to collect delinquent contributions against a withdrawn employer with no ongoing obligations. *See* 29 U.S.C.A. § 1145 ("Every employer who *is obligated* to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall…make such contributions in accordance with the terms and conditions of

such plan or such agreement”) (emphasis added). But the parallel Dominick’s draws is inapt. As the Fund notes, Section 515 does not authorize or define the scope of a civil action. Instead, it defines the contribution obligations of an employer, which a fiduciary may enforce in a civil action under Section 502(g)(2). It simply does not follow from the observation that a present fiduciary may sue a withdrawn employer to enforce contribution obligations the employer incurred prior to its withdrawal that a withdrawn employer with *no* present contribution obligations is authorized to file suit under Section 502(a)(10), which by its plain terms empowers only “an employer that has an obligation to contribute” to bring a civil action.

Nor am I persuaded by Dominick’s argument that a narrow reading of 502(a)(10) would “perversely incentivize” plan sponsors to expel contributing employers for the purpose of avoiding liability for violating a rehabilitation plan. Dkt. 24 at 6. First, expelling a contributing employer against the plan’s interest would be independently actionable as a breach of fiduciary duty under Section 502(a)(2). Second, none of Dominick’s cited authorities suggests that Congress passed Section 502(a)(10) as a means of deterring plan sponsors from violating any duties the plan owes to contributing employers, much less does any authority support construing Section

502(a)(10) more expansively than its plain language provides in order to achieve that purpose.

In short, whatever the merits of Dominick's claims against the Fund, Section 502(a)(10) is not the vehicle for asserting them. As a withdrawn employer with no ongoing obligation to contribute to the Fund, Dominick's is outside the scope of parties authorized to bring suit under that section.

At all events, however, the Rehabilitation Plan does not establish the substantive obligations Dominick's seeks to enforce with respect to the Voluntary Payments. Indeed, the only portion of the Rehabilitation Plan to mention the Voluntary Payments states:

> If an employer chooses, they [sic] can pay a reduced Supplemental Contribution Rate increase over a collective bargaining period provided they [sic] make a single voluntary payment such that the amount of the single voluntary payment, when combined with the reduced Supplemental Contribution Rate increases, is equivalent to the amount expected to be paid under the required Supplemental Contribution Rate increase as outlined in this section over the term of the CBA, with such amount to be determined by the Trustees.

Dkt. No. 1-5 at A-2. Dominick's acknowledges that the Rehabilitation Plan "does not, on its face, address what happens to the" Voluntary Payments in the event of Dominick's withdrawal. Contrary to Dominick's argument, however, the absence of such provisions does not render the Rehabilitation Plan "ambiguous." Instead, it merely confirms that Dominick's

has no claim against the Fund under the Rehabilitation Plan to recover its excess Voluntary Payments. For this additional reason, dismissal of Dominick's Section 502(a)(10) claim is appropriate.

## III.

Although district courts typically relinquish jurisdiction over pendent state claims if all federal are dismissed prior to trial, "[i]f the district court dismisses the federal claims on any basis other than for lack of jurisdiction, the court has discretion regarding whether to maintain supplemental jurisdiction over the state law claims." *Walker v. Ingersoll Cutting Tool Company*, 915 F.3d 1154, 1157 (7th Cir. 2019). Because there is no dispute that Dominick's federal and state claims "form part of the same case or controversy" and "derive from a common nucleus of operative fact," *Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp*., 551 F.3d 599, 607 (7th Cir. 2008) (citations omitted), the exercise of supplemental jurisdiction remains appropriate here.

The Fund seeks dismissal of Dominick's state claims on the grounds that each is preempted by Section 514 of ERISA, 29 U.S.C. § 1144(a); that the contracts claim is additionally preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and is not enforceable against the Fund in any event; and that the unjust enrichment claim fails because

Dominick's does not and cannot claim that the Voluntary Payments were made in error or by mistake. I begin with the question of ERISA preemption.

Dominick's breach of contract claim alleges as follows:

> The Fund agreed to accept Voluntary Payments from Dominick's pursuant to the terms and conditions set forth in the Collective Bargaining Agreements, and as reflected in the Resolutions and Rehabilitation Plan. Pursuant to that agreement, the Fund is obligated to offset future payments required to be made to the Fund by Dominick's, or otherwise reimburse Dominick's.

Cmplt. at ¶ 28. Dominick's goes on to allege that it made, and the Fund accepted, the Voluntary Payments, and that the Fund refused to offset or otherwise reimburse these payments. *Id.* at ¶¶ 29-31.

In support of its unjust enrichment claim, Dominick's states:

> Dominick's paid the Voluntary Payments pursuant to the Fund's Rehabilitation Plan when it was a contributing employer with the expectation that it would receive the benefit of the Voluntary Payments through offsets made against its future payments to the Fund, or some other mechanism to reimburse Dominick's.

*Id.* at ¶ 36.

The Fund's lead argument on preemption is that Dominick's state claims are preempted by Section 514 of ERISA. That section states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered under ERISA. 29 U.S.C. § 1144. From Dominick's

allegations above (as well as from several others identifying the Rehabilitation Plan as a source of Dominick's alleged rights, *see* e.g., ¶¶ 11, 13-15), it is clear that Dominick's state claims "relate to" the Rehabilitation Plan. *See Shaw v. Delta Air Lines, Inc.*, U.S. 85, 96-96 (1983) ("A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.")

Dominick's makes no effort to argue otherwise, but instead invokes the preemption analysis articulated in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), *Connecticut General Life Insurance Co. v. Grand Ave. Surgical Center, Ltd.*, 13 C 4331, 2014 WL 151755, at *2-*3 (N.D. Ill. Jan. 14, 2014), and *Madden v. Country Life Insurance Co.*, 835 F. Supp. 1081 (N.D. Ill. 1993), to argue that dismissal of its state claims is unwarranted.[4] These cases, however (or the cited portions of them), address only whether ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), completely preempts Dominick's state law claims. The "conflict" preemption provision in Section 514 of ERISA, 29 U.S.C. § 1144(a), requires a different analysis and "knocks out any effort to use state law"

[4] Dominick's also cites *McDonald v. Household Intern., Inc.*, 425 F.3d 424, 427-27 (7th Cir. 2005), but that case squarely favors the Fund. In *McDonald*, the court quoted the *Shaw* standard for determining whether a state claim "relates to" an employee benefit plan. As noted above, that standard is clearly satisfied based on Dominick's allegations.

to obtain benefits under an ERISA-regulated plan. *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 127 (7th Cir. 1992). Dominick's state claims are just such an effort.[5]

Dominick's professes bafflement that its claims may be at once preempted by ERISA and non-actionable under Section 502(a)(10). But as the Seventh Circuit explained in *Pohl*, "[o]ne of ERISA's purposes is to protect the financial integrity of the pension and welfare plans by confining benefits to the terms of the plans as written." *Id.* at 128. That purpose "would be thwarted" by allowing state law claims for recovery under plan documents in excess of the written terms of the plan. "The fact that ERISA does not provide a substitute remedy reflects not a senseless gap," but rather "the policy of the statute, [which] requires preemption *and* the denial of a remedy." *Id.* (original emphasis). At all events, Dominick's evidently is not wholly without a remedy, as it points out that "the parties have been actively disputing this and related matters since 2014," when Dominick's "commenced arbitration to challenge the Fund's withdrawal liability assessment." Dkt. No. 24 at 14.

---

[5] To be fair, the Fund also conflates the two doctrines. Although the captions of the Fund's preemption arguments state that Counts II and III are "pre-empted by ERISA § 514(a)," the substance of its argument raises both conflict preemption and complete preemption under *Davila*. Because Dominick's has forfeited any response to the Fund's meritorious Section 514 preemption argument, I need not reach the issue of complete preemption.

Although ERISA preemption mandates dismissal of Dominick's state law claims, I note that Dominick's breach of contract claim fails for the independent reason that it is not supported by the complaint's allegations or attached materials. The most salient flaw in the contracts claim is that Dominick's has not identified any contract containing either the rights it asserts or the obligations it seeks to enforce. As noted above, Dominick's alleges that the Fund

> agreed to accept Voluntary Payments from Dominick's pursuant to the terms and conditions set forth in the Collective Bargaining Agreements, and as reflected in the Resolutions and Rehabilitation Plan. *Pursuant to that agreement*, the Fund is obligated to offset future payments required to be made to the Fund by Dominick's, or otherwise reimburse Dominick's.

Cmplt. at ¶ 28 (emphasis added). Dominick's theory, it appears, is that the CBAs, the Resolutions, and the Rehabilitation Plan collectively embody the parties' "agreement" that the Fund would credit or refund any portion of the Voluntary Payments that exceeded its contribution obligations. Yet, neither the Resolutions nor the Rehabilitation Plan contains the hallmarks of an "agreement" between the parties, and neither can reasonably be read as imposing on the Fund the obligations Dominick's seeks to enforce. Meanwhile, despite attaching, quoting from, and referencing the CBAs extensively in its complaint, in its response brief Dominick's disavows any reliance on the CBAs to support its claims. *See* Dkt. 24 at 12

(“Dominick’s is not alleging a violation of the CBAs)” and n. 12 (“[t]he references to the [Voluntary Payments] in the CBAs are superfluous and put the parties in no different position than they would be in if the CBAs contained no such references.”).

IV.

For the foregoing reasons, the Fund’s motion to dismiss is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: June 6, 2019